THEODORE E. BACON (CA Bar No. 115395)
tbacon@alvaradosmith.com
MIKEL A. GLAVINOVICH (CA Bar No. 186590)
mglavinovich@alvaradosmith.com
ALVARADOSMITH
A Professional Corporation
633 W. Fifth Street, Suite 1100
Los Angeles, CA 90071
Tel: (213) 229-2400
Fax: (213) 229-2499

Attorneys for Defendant
JPMorgan Chase Bank, N.A.
erroneously sued as JPMorgan Chase
Bank, a Corporation

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDHI HAGHIGHI, an Individual, JANA LEE HAGHIGHI, an Individual,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>JPMORGAN CHASE BANK, a Corporation; and DOES 1 through 50, inclusive,<br><br>　　　　Defendants. | **CASE NO.:** CV12-08967-DSF-AJW<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT OF PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**DATE;**　September 8, 2014<br>**TIME:**　1:30 p.m.<br>**CTRM:**　840<br><br>Action Filed:　August 19, 2010<br><br>Action Removed:　October 17. 2012 |

**TO THE HONORABLE DALE S. FISCHER, UNITED STATES DISTRICT COURT JUDGE, ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 8, 2014, at 1:30 p.m., or as soon thereafter as this matter may be heard in Courtroom "840" of the above entitled Court, located at 312 N. Spring Street, Los Angeles, California 90012, the Honorable Dale S. Fischer, United States District Court Judge presiding, defendant JPMorgan Chase Bank, N.A., sued erroneously herein as JPMorgan Chase Bank, a Corporation ("JPMorgan") will move the Court for an Order for Summary Judgment, or in the alternative, Partial Summary Judgment in favor of JPMorgan against all remaining claims raised in plaintiffs Medhi Haghighi and Jana Lee Haghighi's ("Plaintiffs") First Amended Complaint ("FAC").  This Motion is brought pursuant to Federal Rule of Civil Procedure 56, and United States Court for the Central District of California Local Rules 56-1 to 56-3:

1. For an order adjudicating that there is no merit to the first claim for "Violation of California Civil Code Section 1785.25(a)" in the FAC and that the final judgment in this action shall, in addition to any matters determined at trial, award judgment as established by such adjudication.

2. For an order adjudicating that there is no merit to the second claim for "Violation of California Civil Code Section 1785.31" in the FAC and that the final judgment in this action shall, in addition to any matters determined at trial, award judgment as established by such adjudication.

3. For an order adjudicating that there is no merit to the fifth claim for "Declaratory Relief" in the FAC and that the final judgment in this action shall, in addition to any matters determined at trial, award judgment as established by such adjudication.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Jennifer M. Sanclemente, the Declaration of Mikel

A. Glavinovich, the Statement of Uncontroverted Facts, the Request for Judicial Notice, the pleadings and papers on file in this action, and such further oral and documentary evidence as may be presented at the hearing on this Motion.

    This motion is made following the conference of counsel pursuant to L. R. 7-3, which took place by written correspondence on July 14, 2014.  I received written correspondence from Mr. Palmieri on July 23, 2014, and also spoke with him via telephone on that date.  However, we were unable to resolve the issues addressed by this motion.

DATED:  July 25, 2014        ALVARADOSMITH
                                          A Professional Corporation


                              By:   /s/ Mikel A. Glavinovich
                                  MIKEL A. GLAVINOVICH
                                  Attorneys for Defendant
                                  JPMorgan Chase Bank, N.A. erroneously sued as JPMorgan Chase Bank, a Corporation

# TABLE OF CONTENTS

Page

I. SUMMARY OF ARGUMENT ..................................................................... 1

II. STATEMENT OF FACTS ............................................................................ 2

III. STANDARDS FOR SUMMARY JUDGMENT ........................................... 5

IV. ARGUMENT .................................................................................................. 6

    A. JPMorgan Engaged in Accurate Credit Reporting and is Entitled to Judgment as to Plaintiffs' First, Second and Third Causes of Action ... 6

        1. JPMorgan Did Not Violate California Civil Code Section 1785.25 subdivision (a) .............................................................. 8

        2. JPMorgan is also Entitled to Judgment on Plaintiffs Second Cause of Action for Violation of California Civil Code Section 1785.31 because the Second Cause of Action is Dependent on the Invalid First Cause of Action ....................... 10

    B. There is No Present Controversy to Support an Order for Declaratory Relief ................................................................................ 10

V. CONCLUSION ............................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Anderson v. Liberty Lobby,*
 477 U.S. 242, 248, 106 S. Ct. 2205, 91 L. Ed. 2nd 202 (1986) ................................. 6

*Carvalho v. Equifax Information Services, Inc.,*
 629 F.3d 876 at 888 ................................................................................................ 8, 10

*Gorman v. Wolroff & Abramson, LLP,*
 584 F.3d 1141, 1170-71 (C.A. 9th 2009) ................................................................. 10

*Keenan v. Allan,*
 91 F.3d 1275, 1278 (9th Cir.1996) .......................................................................... 6

*Matsushita Electric Industrial Co. v. Zenith Radio,*
 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986) .................................. 6

*Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc.*,
 860 F.Supp. 1448, 1450 (CD CA 1993) ................................................................. 5

**Federal Statutes**

Federal Rule of Civil Procedure, Rule 56(c) ................................................................ 5

Federal Rules of Civil Procedure, § 56(a), (b) ............................................................. 5

Federal Rules of Civil Procedure, § 56(e) .................................................................... 6

**Statutes**

California Civil Code Section 1785.25(a) ............................................................ 1, 8, 10

California Civil Code Section 1785.31 ................................................................... 1, 10

**Regulations**

78 Fed.Reg. 32547 (May 31, 2013) ........................................................................... 5, 9

**Other Authorities**

12 C.F.R. §1026.36(c)(1)(I) ....................................................................................... 5, 9

California Consumer Credit Reporting Agencies Act .................................................. 10

FR Vo. 78, N0. 31 10967-10968 February 14, 2013 ................................................... 10

ii
**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**
3943432.1 -- AL109.W1566

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendant JPMorgan Chase Bank, N.A. erroneously sued as JPMorgan Chase Bank, a Corporation ("JPMorgan"), respectfully submits this Memorandum of Points and Authorities in support of its Motion for Summary Judgment, or in the alternative, Partial Summary Judgment ("Motion") to the first, second, and fifth causes of action in the First Amended Complaint ("FAC") of plaintiffs Medhi Haghighi and Jana Lee Haghighi ("Plaintiffs").

## I.  SUMMARY OF ARGUMENT

This action concerns the real property commonly known as 4539 Valley Spring Drive, Thousand Oaks, CA 91362 ("Subject Property").  On or about February 21, 2003, Plaintiffs obtained a loan for $940,000.00 from Washington Mutual Bank ("Subject Loan") secured by a deed of trust ("DOT") against the Subject Property. Pursuant to the DOT, Plaintiffs are required to maintain insurance on the Subject Property.  In the event Plaintiffs fail to do so, the DOT authorizes the lender to obtain insurance at Plaintiffs' expense.  This is exactly what happened in this case.

Plaintiffs allowed the insurance to lapse, and JPMorgan acquired forced placed insurance on their behalf.  This lead to an increase in Plaintiffs' monthly payment on the Subject Loan, but Plaintiffs refused to pay the additional amount and then refused to pay any amount on the Subject Loan for a period of several months.  As a result, Plaintiffs' credit reports indicated that the payments on the Subject Loan were past due.

Plaintiffs contend that these reports were inaccurate, but fail to acknowledge the actual facts or the consequences of their own actions.  Indeed, Plaintiffs apparently contend that their insufficient payments should have been reported as timely and in full, while their non-payments should have been overlooked entirely.  There is no legitimate basis for this theory and JPMorgan is entitled to judgment as to Plaintiffs' First Cause of Action for Violation of California Civil Code Section 1785.25(a); Second Cause of Action for Violation California Civil Code Section 1785.31; and

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
3943432.1 -- AL109.W1566

Fifth Cause of Action for Declaratory Relief.

**II.     STATEMENT OF FACTS**

Plaintiffs are the owners of the real property commonly known as 4539 Valley Spring Drive, Thousand Oaks, CA 91362 ("Subject Property"). (Separate Statement of Uncontroverted Facts filed concurrently herewith ("UF") No. 1.) On or about February 21, 2003, Plaintiffs obtained a loan for $940,000.00 from Washington Mutual Bank ("Subject Loan") secured by a deed of trust ("DOT") against the Subject Property. (UF No. 2.)

More than five years later, on September 25, 2008, the Office of Thrift Supervision closed Washington Mutual Bank and appointed the FDIC as Receiver for Washington Mutual Bank. (UF No. 3.) On the same date, JPMorgan acquired certain assets and liabilities of Washington Mutual Bank from the FDIC acting as receiver, including Washington Mutual Bank's interest in the Subject Loan and DOT, pursuant to the Purchase and Assumption Agreement ("Agreement") between the FDIC and JPMorgan dated September 25, 2008. (UF No. 4.) Thus, as of September 25, 2008, Plaintiffs obligations on the Subject Loan and DOT were toward JPMorgan. (UF No. 5.)

Pursuant to the terms of the DOT, Plaintiffs were required to maintain homeowner's insurance to protect the Subject Property. (UF No. 6.) In the event Plaintiffs failed to do so, the DOT permitted the lender to obtain forced insurance coverage and pass the cost along to Plaintiffs. (UF No. 7. ) Plaintiffs admit that there was a lapse in their insurance coverage from February 28, 2009 to July 7, 2009. (UF No. 8.) During the period of lapsed coverage, JPMorgan paid $2,301.00 in forced insurance coverage, which was added to the amount due on the Subject Loan. (UF No. 9.)

In light of the lapse in insurance coverage, Plaintiffs were sent a letter on March 30, 2009, in which they were informed that their insurance policy had expired on February 28, 2009, and requested Plaintiffs submit proof of insurance coverage. (UF

1 No. 10.) This communication was followed with another letter dated April 24, 2009, advising Plaintiffs that the bank had not received a renewal policy or proof of insurance from Plaintiffs. (UF No. 11.) The April 24, 2009, letter further advised that the bank would "order lender-placed coverage" if Plaintiffs failed to provide verification of coverage within 25 days. (UF No. 12.) On May 29, 2009, the bank paid for lender placed insurance in the amount of $6,463.00. (UF No. 13.) The amount was billed to Plaintiffs under an escrow account in connection with the Subject Loan. (UF No. 14.)

In a letter dated June 4, 2009, Plaintiffs received a "Notice of Lender-Placed Insurance" for which a premium of $6,463.00 had been paid. (UF No. 15.) The letter further advised Plaintiffs that the $6,463.00 amount would be billed to the Subject Loan and that an impound escrow account had been established. (UF No. 16.) A few weeks later, Plaintiffs sent JPMorgan proof of insurance coverage for the period July 8, 2009 through July 27, 2010. (UF No. 17.) Plaintiffs did not provide proof of insurance for February 28, 2009 through July 7, 2009. (UF No. 18.)

As a result of the proof of insurance Plaintiffs provided, JPMorgan sent them a letter dated July 14, 2009, in which the bank advised Plaintiffs that it had cancelled the forced insurance effective July 8, 2009. (UF No. 19.) The same letter also advised them that a premium of $2,301.00 was due to the bank for the period of lapsed coverage, and that the $2,301.00 amount had been billed to the Subject Loan. (UF No. 20.) Finally, the July 14, 2009, letter advised Plaintiffs that the bank would provide a follow up letter indicating how the monthly payment to repay the $2301.00 would be calculated. (UF No. 21.)

On July 16, 2009, the bank credited Plaintiffs' escrow account in the amount of $4,162.00. (UF No. 22.). Consistent with the bank's July 14, 2009 letter, only the $2,301.00 remained due in Plaintiffs' escrow account pursuant to the lapse in insurance coverage. (UF No. 23.)

ALVARADOSMITH
A PROFESSIONAL CORPORATION
LOS ANGELES

3
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

3943432.1 -- AL109.W1566

In follow up to the July 16, 2009, letter, JPMorgan sent Plaintiffs an "Annual Escrow Account Statement," dated September 16, 2009, (the "Escrow Statement"). (UF No. 24.) The Escrow Statement again advised Plaintiffs of the $2,301.00 escrow account shortage due, and gave them an option to either pay the entire balance due or pay the shortage over a 12 month period. (UF No. 25.)  Per the Escrow Statement, if Plaintiffs chose the option to pay over a 12 month period, the additional $191.75 monthly due would "be automatically added to [their] home loan payment for December 2009 through November 2010." (UF No. 26.) In the event that Plaintiffs did not make a selection, the default was to have the amount owed spread over the 12 month period. (UF. No. 27.)  Thus, as of approximately September 16, 2009, Plaintiffs were advised that starting in December 2009, their monthly payment on the Subject Loan would increase by $191.75 due to the escrow shortage unless they reimbursed JPMorgan for the $2,301.00 it spent in procuring insurance. (UF No. 28.)

Plaintiffs did not reimburse the $2,301.00 in a single payment. (UF No. 29.) Accordingly, the amount due by Plaintiffs on the Subject Loan for December 2009 was $5,827.52 ($5,635.77 + $191.75). (UF No. 30.) However, Plaintiffs only remitted $5,635.77 on December 4, 2009; thus, the payment was credited to a suspense account as it did not cover the complete payment due. (UF No. 31.) Plaintiffs December 24, 2009, payment for the amount owed in January 2010 was also short the $191.75. (UF No. 32.) Plaintiffs did not make any payments in February 2010, and again made an insufficient payment on March 5, 2010. (UF No. 33.)   Plaintiffs then refused to pay any amount for several months. (UF No.  34.)

The FAC is premised on the allegations that JPMorgan failed to properly credit the December 4, 2009; December 24 2009; and March 5, 2010 payments. (UF No. 35.)  More specifically, Plaintiffs allege that JPMorgan reported "incomplete and inaccurate information" to Experian regarding these payments. (UF No. 36.) However, the Experian reports obtained via subpoena by Plaintiffs indicate that payments in question were noted as late or past due. (UF No. 37.)  It is undisputed that

the payments were insufficient, but Plaintiffs contend that this fact was improperly communicated to credit reporting agencies. (UF No. 38.)

This Court has already concluded that the DOT authorized JPMorgan to obtain the lender-placed insurance, and add the cost of that insurance to their monthly payments when the Plaintiffs did not to reimburse the cost in one lump-sum payment. (UF No. 52.) The Court has also concluded that JPMorgan is not a debt collector for purposes of the Fair Debt Collection Practices Act. (UF No. 53.) Thus, Plaintiffs only remaining claims are based on their assumption that JPMorgan provided false or inaccurate information to credit reporting agencies. In its April 16, 2014 Order regarding the DOT interpretation issue, the Court noted that the "order does not resolve the issue of whether Defendants could legally fail to apply partial payments to the loan and then report a completely missed payment to the credit reporting services. See 12 C.F.R. §1026.36(c)(1)(I)." (UF No. 54.) However, the Court also noted that this regulation may not have been in effect at the time "of the events at issue." (UF No. 55.) In fact, it was not – the regulation did not go into effect until January 10, 2014. (*See* 78 Fed.Reg. 32547 (May 31, 2013).) Thus, this motion will resolve the outstanding issue in JPMorgan's favor.

## III. STANDARDS FOR SUMMARY JUDGMENT

A motion for summary judgment is a procedure which terminates, without a trial, actions in which "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Federal Rule of Civil Procedure, Rule 56(c). A summary judgment motion may be made in reliance on the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." (*Id.*) Upon showing that this is no genuine issue of material fact as to particular claims, the court may grant summary judgment in the party's favor "upon all or any part thereof." (Federal Rules of Civil Procedure, § 56(a), (b); See *Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc.*, 860 F.Supp. 1448, 1450 (CD CA 1993).)

In order to preclude a grant of summary judgment, the non-moving party must do more than show that there is some "metaphysical doubt" as to the material facts. (*Matsushita Electric Industrial Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986) ("*Matsushita*").) Rather, the non-moving party must set forth "'specific facts showing that there is a genuine issue for trial.' " (*Id.* at 587 (quoting Federal Rules of Civil Procedure, § 56(e).) The substantive law defines which facts are material. (*Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S. Ct. 2205, 91 L. Ed. 2nd 202 (1986).) Under Rule 56(e), the adverse party must allege specific facts supported by affidavit that raise triable issues. (*Id.*) Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. (*Keenan v. Allan,* 91 F.3d 1275, 1278 (9th Cir.1996).)

In this case, the Plaintiffs' testimony and discovery responses, as well as Plaintiffs' expert's testimony and the documents produced in discovery all indicate that JPMorgan reported only accurate information regarding Plaintiffs' late, insufficient and or missed payments on the Subject Loan. Moreover, the regulation on which Plaintiffs stake their claim for inaccurate credit reporting was not in effect at the time of the events issue, and Plaintiffs can offer no indication that the regulation was intended to be applied retroactively. At this point in the litigation, Plaintiffs cannot possible raise any meaningful doubt to this conclusion and JPMorgan is entitled to judgment in its favor.

## IV.   ARGUMENT

### A.   JPMorgan Engaged in Accurate Credit Reporting and is Entitled to Judgment as to Plaintiffs' First, Second and Fifth Causes of Action

Plaintiffs' first three claims all concern allegations that JPMorgan made incomplete or inaccurate reports to Experian regarding Plaintiffs' December 4, 2009; December 24, 2009, and March 5, 2010 payments ("Subject Payments"). (UF Nos. 35-36.) However, each of these payments was for $5,635.77, which was the amount of their monthly payment *before* December 1, 2009, when the payment increased by

1  $191.75 to account for the money the lender was forced to spend when Plaintiffs
2  allowed their homeowners' insurance to lapse. (UF Nos. 24-33.)  Thus, the Subject
3  Payments were insufficient and could not be considered timely.  Nonetheless,
4  Plaintiffs apparently believe that the Subject Payments should have been reported as
5  on-time and in-full.  However, the uncontroverted facts and reveal no plausible basis
6  for this theory.

7  First, it bears repeating that Plaintiffs admit they failed to maintain
8  homeowner's insurance on the Subject Property as required by the DOT.  (UF No. 8.)
9  Plaintiffs also admit that they did not pay the full amount owed in regard to the
10 Subject Payments, thus refusing to reimburse JPMorgan for the lender placed
11 insurance.  (UF Nos. 24-33.)  Furthermore, Plaintiffs concede that they then refused to
12 make any payments on the Subject Loan for several months.  (UF No. 34.)  Indeed,
13 Plaintiffs' own expert witness testified that JPMorgan had the right to report in the
14 manner it did, and was within its discretion to determine how to apply partial
15 payments.  (UF Nos. 46, 58.) Further, the expert could not say JPMorgan engaged in
16 any inaccurate credit reporting.  (UF Nos. 46.)  More specifically, Plaintiffs' expert
17 testified:  "it was at the discretion of Chase whether they wanted to apply the money
18 towards the payment as – even if it was $200 short, when the next payment came in,
19 *they could have* applied one full payment, including that extra $200, *if they so chose*
20 [sic], and they could have collected for the late charges." (UF No. 56 (emphasis
21 added).)  And as to whether the reporting was inaccurate, the same expert testified:
22 "[b]ecause of the way the report reads and because of the information I have, it's
23 impossible to make a correlation." (UF No. 57.)

24  As such, the fact that Experian reported the Subject Loan as past due from
25 January 2010 to June of 2010 is consistent with the fact that Plaintiffs' Subject
26 Payments were not paid in full in a timely matter, and that there were no payments
27 made between March 5, 2010 and July 2010.  (UF Nos. 31-34; 50.)  Plaintiffs cannot
28 offer any legitimate evidence to disprove this conclusion, but instead they rely on

ALVARADOSMITH
A PROFESSIONAL CORPORATION
LOS ANGELES

7
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

inconsistent expert testimony regarding what JPMorgan *should* have done, even if what it did do was within its discretion. Nor can Plaintiffs cannot offer any substantive authority for their position that they are entitled to impose requirements that simply did not exist.

### 1. **JPMorgan Did Not Violate California Civil Code Section 1785.25 subdivision (a)**

Plaintiffs' first cause of action alleges that JPMorgan violated California Civil Code Section 1785.25(a). (*See* First Amended Complaint ("FAC") at ¶¶ 5-15.) Section 1785.25(a) provides that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Accordingly, in order for a provider of credit information, such as a bank, to be liable under Section 1785.25 (a), a plaintiff must prove both that 1) the credit information was inaccurate, and 2) that the bank knowingly reported the inaccurate information. (Cal. Civ. Code § 1785.25(a); *see Carvalho v. Equifax Information Services, Inc.,* 629 F.3d 876 at 888.)

As established above, there was nothing inaccurate reported to the credit agencies. (UF Nos. 37-39; 47-51.) Plaintiffs failed to make their full payments in a timely manner and the Experian Report reflects nothing more than this. (UF No. 37; 51.) Moreover, this is consistent with industry standards at the time.

As stated above, Plaintiffs December 2009, January 2010 and February 2010 were short of the full amount owed. In the event the borrowers do not make a full payment, the deed of trust sets forth the permissible options the lender may exercise for handling partial payments. More specifically, Section 1 of the Uniform Covenants in the deed of trust states: "Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, *but Lender is not obligated to apply such payments at the time such payments are*

*accepted. … Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current."* (Emphasis added.) In this case, because Plaintiffs continued to make partial payments or no payments at all, the loan was not brought current.

Again, JPMorgan's actions are consistent with comments made in the Federal Register:

> Outreach to consumer and industry stakeholders revealed that partial payments are currently handled in a variety of ways: Some servicers do not accept partial payments, some servicers apply partial payments, and some servicers send partial payments to a suspense or unapplied funds account. *Previously, there were no Federal regulations that governed such accounts …*

(78 Fed. Reg. 31, 10954 (2013) to be codified 12 CFR §1026 (emphasis added) .)

As such, Plaintiff cannot establish that JPMorgan reported inaccurate information – knowingly or otherwise. Furthermore, it bears repeating that to the extent Plaintiffs claim that the reporting was inaccurate because it was in violation of 12 CFR §1026.36, the claim is moot because that regulation did not become effective until January 10, 2014. (*See* 78 Fed.Reg. 32547 (May 31, 2013).)

Moreover, Plaintiffs cannot merely rely on their expert's testimony as to what JPMorgan ought to have done, when research shows that is was not standard practice to remind borrowers that partial payments would be placed in suspense. For instance, Plaintiffs' expert testified that it was industry practice to notify borrowers if their payment was insufficient. (UF No. 48.) However, his testimony in contradicted by the Federal Register. In 2013, the Federal Register discussed proposed rules designed to regulate how and when a borrower much be notified that a partial payment was place in a suspense account. It concluded, "… the Bureau does not believe it is appropriate to require servicers to send an annual disclosure on the suspense account for the first three years law in existence at the time indicated", thus the proposed rule was modified "to provide that if funds are being held in a suspense account, the amount held in any suspense account  must be disclosed in the past periodic breakdown on the

periodic statement," however "the servicer may move the message about what must be done for the funds to be applied to a separate page of the statement, or may send this disclosure are part of a separate letter." (FR Vo. 78, N0. 31 10967-10968 February 14, 2013.) Thus, Plaintiffs' cannot reasonably contend that JPMorgan engaged in anything untoward when it applied Plaintiffs' insufficient payments to a suspense account, but failed to send Plaintiffs yet another letter explaining why the mortgage payment increased in December 2009. (UF Nos. 1-55.)

### 2. JPMorgan is also Entitled to Judgment on Plaintiffs Second Cause of Action for Violation of California Civil Code Section 1785.31 because the Second Cause of Action is Dependent on the Invalid First Cause of Action

Courts have deemed both Section 1785.25 (g) and Section 1785.31 of the Civil Code ("Section 1785.31") as giving a plaintiff a private right of action to enforce Section 1785.25(a). (*Carvalho, supra*, 629 F.3d at 888; *Gorman v. Wolroff & Abramson, LLP,* 584 F.3d 1141, 1170-71 (C.A. 9th 2009).); Cal. Civ. Code §§ 1785.25 (g).) Specifically, Section 1785.31 gives plaintiffs a right to damages for violation of the California Consumer Credit Reporting Agencies Act ("CCRAA"). (Cal. Civ. Code § 1785.31.) In other words, Section 1785.31 is merely an enforcement mechanism for Section 1785.25(a) and cannot be the basis for a separate, distinct cause of action. The Court bring disposition of this claim without delay.

### B. There is No Present Controversy to Support an Order for Declaratory Relief

In their Fifth Cause of Action, Plaintiffs ask for a "Court Declaration that the foregoing incomplete or inaccurate reporting by Defendant Chase was improper, that Defendant Chase was obligated to timely and properly post said payments, and that Defendant Chase must remove and/or correct said incomplete and inaccurate credit reporting immediately." (UF No. 58.) However, as set forth above, the DOT authorized JPMorgan to handle the Plaintiffs' late and insufficient payments in the

manner in which it did, and Plaintiffs' hypothetical industry standards cannot be established, nor can they rely on a regulation that was not even in effect at the time of the relevant events. Thus, Plaintiffs can no longer claim, much less prove that there is any actual controversy. (UF Nos. 1-59.)

## V. CONCLUSION

Based on the foregoing, JPMorgan respectfully request the Court grant its Motion as to the first, second, and fifth causes of action alleged in Plaintiffs' First Amended Complaint.

DATED: July 25, 2014

ALVARADOSMITH
A Professional Corporation


By: /s/ Mikel A. Glavinovich
MIKEL A. GLAVINOVICH
Attorneys for Defendant
JPMorgan Chase Bank, N.A. erroneously sued as JPMorgan Chase Bank, a Corporation